IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IBEW LOCAL 613 DEFINED
CONTRIBUTION PENSION FUND,
et al.,

    Plaintiffs,

      v.

DEBBIE L. MOORE, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:04-CV-3738-TWT

OPINION AND ORDER

      This is an interpleader action.  It is before the Court on Defendants Kendra and

Torre A. Tellis's Motion for Summary Judgment [Doc. 23] and Defendant Debbie L.

Moore's Motion for Summary Judgment [Doc. 27].  For the reasons set forth below,

the Tellis Defendants' Motion for Summary Judgment is GRANTED, and Defendant

Moore's Motion for Summary Judgment is DENIED.

I.  BACKGROUND

      Plaintiffs IBEW Local 613 Defined Contribution Pension Fund and its Trustees,

Lonnie Plott and Milton Clowers, initiated this interpleader action to determine the

proper beneficiaries of certain pension benefits provided to Roderick O. Tellis.  Mr.

Tellis was a participant in the IBEW Local 613 Defined Contribution Pension Fund (the "Pension Fund"), an employee welfare benefit plan.  Kendra and Torre A. Tellis (the "Tellis Defendants") and Debbie L. Moore have asserted competing claims  to the benefits payable under the Pension Fund.  The amount of the benefit in question is approximately $87,000.  (Am. Compl. ¶ 15.)

Mr. Tellis and Ms. Moore were married on February 4, 1997.  On March 8, 1999, Mr. Tellis executed a beneficiary designation form for the Pension Fund naming Ms. Moore as the sole beneficiary.  In 2001, Ms.  Moore filed for divorce.  On July 9, 2001, the parties entered into a Mediation Agreement that was later incorporated into the Divorce Decree.  (Id., Exs. E-G.)  The Mediation Agreement addressed the division of marital property and stated, in relevant part, that: "Both parties agreed to keep their own retirement packages and not make future claims."  (Id., Ex. E.)  Mr. Tellis and Ms. Moore were divorced on October 1, 2001, when a Final Judgment and Decree of Divorce  was entered in the Superior Court of DeKalb County, Georgia. (Tellis Defs.' Mot. for Summ. J., Ex. G.)

Mr. Tellis died suddenly on November 22, 2001, less than two months after the divorce was finalized.  At the time of his death, Mr. Tellis had not changed the beneficiary designation for the Pension Fund.  Because she remained the designated beneficiary at the time of Mr. Tellis's death, Ms. Moore claims the benefits due from

the Pension Fund.  The Tellis Defendants, the surviving children of Mr. Tellis from an earlier relationship, argue that Ms. Moore waived her right to the benefits.  Based on their status as Mr. Tellis's heirs, the Tellis Defendants also assert a claim to the Pension Fund benefits.  (See Tellis Defs.' Mot. for Summ. J., Ex. C.)  As a result of the competing claims, the Plaintiffs filed this interpleader action.  The Tellis Defendants and Ms. Moore filed cross motions for summary judgment.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  DISCUSSION

At the time of Roderick Tellis's death, Ms. Moore was named as the beneficiary of the Pension Fund.  Thus, she argues that she is entitled to receive the benefits of the fund.  The Tellis Defendants contend, however, that Ms. Moore waived her right to the Pension Fund benefits based on the provision of the Mediation Agreement that stated that: "Both parties agreed to keep their own retirement packages and make no future claims."  (Tellis Defs.' Mot. for Summ. J., Ex. E.)  Ms. Moore claims that the alleged waiver is  unenforceable.  The issue before the Court, therefore, is whether Ms. Moore, as the designated beneficiary of the Pension Fund, effectively waived her right to benefits under the Pension Fund as part of her divorce settlement.

The parties agree that the Pension Fund is an employee welfare benefit plan within the meaning of Section 3(1) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.  ERISA supercedes "any and all State laws insofar as they . . . relate to any employee benefit plan" covered by ERISA.  29 U.S.C. § 1144(a).  The Supreme Court has given an expansive construction to ERISA's preemption section, interpreting the phrase "relate to" to include any state law claim that "has a connection with or reference to" an employee benefits plan.  New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983)).  The payment of benefits is a central concern of plan administration.  Egelhoff v.

Egelhoff, 532 U.S. 141, 148 (2001).  Thus, ERISA preempts state law regarding determination of the proper beneficiary under an ERISA benefits plan.  See Metropolitan Life Ins. Co. v. Pressley, 82 F.3d 126, 129 (6th Cir. 1996); Brandon v. Travelers Ins. Co., 18 F.3d 1321, 1325 (5th Cir. 1994); Brown v. Connecticut Gen. Life Ins. Co., 934 F.2d 1193, 1195 (11th Cir. 1991) (citing McMillan v. Parrott, 913 F.2d 310, 311 (6th Cir. 1990)).

The Court must next determine if the statutory text of ERISA provides the applicable federal law regarding whether a nonparticipant beneficiary may waive her right to benefits under the plan or whether federal common law governs the issue.  If the statutory text of ERISA is silent on an issue, courts have the authority "to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself."  Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1041 (11th Cir. 1998) (citation omitted); see also Dixon v. Life Ins. Co. of N. Am., 389 F.3d 1179, 1183 (11th Cir. 2004) ("Although comprehensive in many respects, ERISA is silent on matters of contract interpretation.  The courts have thus produced a body of federal common law providing such guidance.").  The Eleventh Circuit Court of Appeals has not addressed whether ERISA contains any provision regarding waiver by a beneficiary.  The other circuits are split as to whether ERISA supplies the rule of law or whether federal common law applies.

Adopting the minority view, the Sixth and Third Circuits have held that the text of ERISA expressly supplies the rule of law.  See McGowan v. NJR Serv. Corp., 423 F.3d 241, 2005 WL 2208069, *4 (3d Cir. 2005); Pressley, 82 F.3d at 130; McMillan v. Parrott, 913 F.2d 310, 311 (6th Cir. 1990); see also Krishna v. Colgate Palmolive Co., 7 F.3d 11, 16 (2d Cir. 1993)("It would be counterproductive to compel the Policy administrator to look beyond those designations into varying state laws regarding wills, trusts and estates, or domestic relations to determine the proper beneficiaries of Policy distributions.").  The Sixth Circuit has concluded that section 1104(a)(1)(D) of ERISA sets forth the statutory rule for determining a beneficiary and resolving competing claims to benefits.   Section 1104(a)(1)(D) requires plan administrators to discharge their duties "in accordance with the documents and instruments governing the plan."  29 U.S.C. § 1104(a)(1)(D).  According to the Sixth Circuit, a waiver in an external document cannot disturb a beneficiary designation because section 1104(a)(1)(D) clearly mandates that plan administrators determine the beneficiary based only on the plan documents.  Pressley, 82 F.3d at 130; McMillan, 913 F.2d at 312.  In McGowan, one judge on the Third Circuit agreed with the Sixth Circuit's approach and relied in part on the language of section 1104.  McGowan, 2005 WL 2208069, at *4.  A majority of the three-judge panel, however, focused on the anti-alienation provision of ERISA, 29 U.S.C. § 1056(d)(1), which provides that

plan benefits may not be assigned or alienated.  Id. at *6-7, 9-11.  According to the Third Circuit, a waiver is the equivalent of an assignment because, by renouncing her right to the plan benefits, the beneficiary effectively transfers her interest back to the plan participant.  Id. at *7, 9.  Therefore, in order for a waiver to be valid, it must satisfy the requirements of a qualified domestic relations order ("QDRO"), a statutory exception to the anti-alienation provision.  29 U.S.C. § 1056(d)(3); McGowan, 2005 WL 2208069, at *8, 9.

This Court is not persuaded that the express terms of ERISA resolve the issue of whether a beneficiary may waive her right to benefits under a pension plan.  Section 1104(a)(1)(D) "simply embodies the common-sense notion that a plan administrator should not take actions that are inconsistent with the plan's guidelines."[1]  McGowan, 2005 WL 2208069, at *11 (Becker, J., concurring).  It does not completely prohibit the plan administrator from reviewing or relying upon documents external to the plan documents.  To the contrary, external documents must be consulted in some instances in association with beneficiary determinations and benefit distribution.  For example, plan administrators "must investigate the marital history of a participant and determine

---

[1]29 U.S.C. § 1104(a)(1)(D) provides: "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participant and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter."

whether any domestic relations orders exist that could affect the distribution of benefits."[2] Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown, 897 F.2d 275, 282 (7th Cir. 1990) (en banc); see also Estate of Altobelli v. International Business Machines Corp., 77 F.3d 78, 81 (4th Cir. 1996) ("ERISA was designed to simplify plan administration as much as possible, but it still requires administrators to consider divorce decrees to determine whether they are Qualified Domestic Relations Orders, which are enforceable."). Thus, nothing in the language of the fiduciary duty provision, 29 U.S.C. § 1104(a)(1)(D), explicitly addresses or invalidates beneficiary waivers set forth in external documents.

Similarly, the anti-alienation clause does not address the validity of waivers. The anti-alienation clause prohibits only the assignment or alienation of benefits. A number of circuits have concluded that the anti-alienation clause does not apply to waivers because it bars only the assignment or alienation of benefits by a participant and does not limit dispositions made by a designated beneficiary. See Altobelli, 77 F.3d at 81; Fox Valley, 897 F.2d at 279. However, the anti-alienation clause itself does not distinguish between actions by participants and beneficiaries. Moreover, the

---

[2]Congress expressly exempted QDROs from the anti-alienation provision but did not provide a similar exemption with regard to section 1104(a)(1)(D). It is reasonable to assume that this silence implies that Congress did not see a conflict between section 1104(a)(1)(D) and the requirement that plan administrators consult QDROs. McGowan, 2005 WL 2208069, at *11 (Becker, J., concurring).

Supreme Court's decision in <u>Boggs v. Boggs</u>, 520 U.S. 833 (1997), seems to cast doubt on such a distinction.  In <u>Boggs</u>, the Supreme Court held that the anti-alienation clause preempted state law permitting a testamentary transfer by a beneficiary.  <u>Boggs</u>, 520 U.S. at 851; <u>see also</u> <u>McGowan</u>, 2005 WL 2208069, at *11 ("At the very least, <u>Boggs</u> stands for the proposition that the anti-alienation clause applies equally to beneficiaries and participants . . . .").  The Court, however, need not determine if the reach of the anti-alienation clause is limited to participants or also restricts the ability of beneficiaries to assign or alienate their interests.  Regardless of the party acting, the anti-alienation clause does not apply to waivers.  Alienation and assignment are not synonymous with waiver.  An "alienation" is a "*[c]onveyance* or *transfer* of property to another."  Black's Law Dictionary 80 (8th ed. 2004) (emphases added).  Similarly, "assignment" refers to "[t]he *transfer* of rights or property."  <u>Id.</u> at 128 (emphasis added).  "Waiver," however, is "[t]he voluntary *relinquishment* or *abandonment*–express or implied–of a legal right or advantage."  <u>Id.</u> at 1611 (emphases added).  Rather than involving the transfer of rights, waiver concerns the abdication of rights.  Therefore, by choosing to include only a restriction on alienation and assignment, Congress did not intend the anti-alienation clause to limit the ability of a beneficiary to relinquish her rights.  <u>See</u> <u>Clift v. Clift</u>, 210 F.3d 268, 270 (5th Cir. 2000); <u>Altobelli</u>, 77 F.3d at 81; <u>Fox Valley</u>, 897 F.2d at 279; <u>see also</u> <u>McGowan</u>, 2005

WL 2208069, at *13 (Fuentes, J., dissenting); <u>Estate of Zienowicz v. Metropolitan Life</u> <u>Ins. Co.</u>, 205 F. Supp. 2d 339, 342 n.2 ("[A]lthough any *assignment* of benefits should follow the QDRO requirements, QDRO requirements do not need to be followed in order to *waive* an interest in welfare benefits under ERISA.").   Any restriction on waiver is conspicuously absent from the anti-alienation clause and, thus, this provision and the related QDRO requirements do not supply the governing law for waivers by beneficiaries.

Neither the fiduciary duty provision nor the anti-alienation clause addresses the issue of waiver.  The Court, therefore, adopts the view of the majority of circuits that have considered the issue and concludes that ERISA does not explicitly address if and how a plan beneficiary can waive her right to benefits.  See <u>Guardian Life Ins. Co. of</u> <u>Am. v. Finch</u>, 395 F.3d 238, 240-43 (5th Cir. 2004); <u>Melton v. Melton</u>, 324 F.3d 941, 945-46 (7th Cir. 2003); <u>Hill v. AT&T Corp.</u>, 125 F.3d 646, 648 (8th Cir. 1997); <u>Altobelli</u>, 77 F.3d at 80; <u>Metropolitan Life Ins. Co. v. Hanslip</u>, 939 F.2d 904, 907 (10th Cir. 1991); <u>Fox Valley</u>, 897 F.2d at 280-81; <u>see also</u> <u>Metropolitan Life Ins. Co. v.</u> <u>Flinkstrom</u>, 303 F. Supp. 2d 34, 41-43 (D. Mass. 2004); <u>Metropolitan Life Ins. Co.</u> <u>v. Palmer</u>, 238 F. Supp. 2d 821, 826 (E.D. Tex. 2002).  Because ERISA is silent on waiver, these courts have applied prevailing federal common law and have held that a waiver by a designated beneficiary is valid if it is "explicit, voluntary, and made in

good faith."  <u>Finch</u>, 395 F.3d at 240; <u>Melton</u>, 324 F.3d at 945;  <u>see also</u> <u>Fox Valley</u>, 897 F.2d at 280-81 (nonparticipant beneficiary can waive benefits through specific language in divorce settlement).  In evaluating the validity of a waiver, the focus is on "whether a reasonable person would have understood that she was waiving her interest in the proceeds or benefits in question" and not whether the waiver contained certain "magic language."  <u>Melton</u>, 324 F.3d at 945-46; <u>see also</u> <u>Hill</u>, 125 F.3d at 648 (waiver need not include the term "beneficiary" but must be "sufficiently specific to convey the intent of both the parties to divest one or the other, or both, of a beneficiary interest"); <u>Altobelli</u>, 77 F.3d at 81 (valid waiver where "each party clearly intend to relinquish all interests in the pension plans of the other").

The waiver at issue in the Mediation Agreement states: "Both parties agreed to keep their own retirement packages and not make future claims."  (Tellis Defs.' Mot. for Summ. J., Ex. E.)  In addition, the Mediation Agreement includes a spreadsheet that details which party is to receive which assets.  The spreadsheet states that "Rod" is to receive "Rod's Annuity."  (<u>Id.</u>)  Ms. Moore acknowledges that parties can contract away certain beneficiary rights.  (Def. Moore's Resp. & Mot. for Summ. J. at 18.)  She argues, however, that such a waiver is valid only if it satisfies the requirements of a QDRO, which the Mediation Agreement does not.  This argument is unavailing.  As discussed above, the QDRO exception applies only to assignments

and alienations.  Thus, the QDRO requirements do not need to be followed in order to waive an interest in pension benefits.  See Fox Valley, 897 F.2d at 279.

The Court finds that the Mediation Agreement constitutes a valid waiver of Ms. Moore's beneficiary interest in the Pension Fund benefits.   Ms. Moore entered into the Mediation Agreement voluntarily, and there is no evidence that the agreement was not made in good faith.[3]  The agreement expressly states not only that the retirement benefits  belonged to Mr. Tellis, but that Ms. Moore agreed not to make any future claims to the plan.  Although it possibly could have been more artfully drafted, the waiver is sufficiently specific to show that Ms. Moore intended to waive whatever interest she had in Mr. Tellis's retirement plan.   Absent a designated beneficiary, the benefits of the Pension Fund pass to Mr. Tellis's heirs.  As the surviving children and sole heirs of Mr. Tellis, Kendra and Torre A. Tellis are entitled to the proceeds of the Pension Fund.  Summary judgment is granted in their favor.

---

[3]Ms. Moore was represented by counsel during the divorce, and her counsel was present when the Mediation Agreement was negotiated and signed.  (See Tellis Defs.' Mot. for Summ. J., Ex. A.)

IV.  <u>CONCLUSION</u>

For the reasons set forth above, Defendants Kendra and Torre A. Tellis's Motion for Summary Judgment [Doc. 23] is GRANTED, and Defendant Debbie L. Moore's Motion for Summary Judgment [Doc. 27] is DENIED.

SO ORDERED, this 12 day of October, 2005.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge